UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LUVENIA DAVENPORT, ) | |
| a/k/a LAVENIA DAVENPORT, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CAUSE NO.: 1:06-CV-330** |
| ) | |
| MICHAEL J. ASTRUE,[1] ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Luvenia Davenport appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). (Docket # 1.) Pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Northern District of Indiana Local Rule 72.1(d)(1)(K), District Judge Allen Sharp referred the appeal to the undersigned Magistrate Judge for the issuance of a Report and Recommendation. (Docket # 17.)

Having reviewed the record, the undersigned Magistrate Judge recommends that the Commissioner's decision be AFFIRMED. This Report and Recommendation is based on the following facts and principles of law.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security; therefore, Michael J. Astrue is automatically substituted for Jo Anne B. Barnhart as the Defendant in this case. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Davenport filed a claim for DIB and SSI on April 17, 2003, alleging a disability onset date of October 4, 2000. (Tr. 77-79.) After her claim was denied initially and upon reconsideration, Davenport requested an administrative hearing. (Tr. 49-62.) On December 14, 2005, ALJ Frederick McGrath conducted a hearing at which Davenport, who was *pro se* at the time,[3] her niece, and a vocational expert testified. (Tr. 30-48.) The ALJ then rendered an unfavorable decision on April 13, 2006. (Tr. 8-16.) The Appeals Council denied Davenport's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 4-7.) Davenport filed here on September 28, 2006, seeking review of the Commissioner's decision, and the matter is now fully briefed.

At the time of the ALJ's decision, Davenport was forty-nine years old. (Tr. 12.) She is a high school graduate and attended college for one year. (Tr. 90.) Her past relevant work experience includes employment as a medical records clerk, medical billing clerk, dietary aid, and cashier. (Tr. 15, 85, 121.) She claims she can no longer work due to diabetes; injuries to her head, knees, and back; and numbness, throbbing, and tingling in her legs. (Tr. 12, 84.)

Davenport's sole challenge in this appeal is that the ALJ failed to fully and fairly develop the record when questioning her at the administrative hearing. In that regard, the ALJ opened the hearing with questions regarding Davenport's diabetes. (Tr. 34.) Noting that Davenport has received treatment for diabetes since October 2000 and that she takes "a number" of different

---

[2] The administrative record in this case is voluminous (285 pages), and the parties' disputes involve only small portions of it, namely whether the Administrative Law Judge ("ALJ") fully and fairly developed the record at the administrative hearing. Therefore, in the interest of brevity, this Report and Recommendation recounts only the portions of the record necessary to the decision.

[3] Davenport subsequently obtained counsel to represent her in these proceedings.

2

medications, the ALJ first asked Davenport: "How does it affect you on a day-to-day basis at the present time?" (Tr. 34.) Davenport responded that she has been unable to control her blood sugar, "so that kind of . . . throws [her] off." (Tr. 35.) She then answered in the affirmative when asked if she monitors her blood sugar levels every day. (Tr. 35.) The ALJ next inquired whether Davenport makes daily adjustments to her insulin intake or whether she makes only occasional adjustments, and she responded that she takes insulin twice a day per her doctor's instructions and that her doctor adjusts the amount during office visits. (Tr. 35.) When questioned whether she has been hospitalized and whether she is on a special diet as a result of her diabetes, Davenport answered, "No." (Tr. 35.)

  The ALJ then asked Davenport, "What difficulties do you have as a result of [the diabetes]? . . . Do you have any problems with your vision[?]" (Tr. 35.) She replied, "A little bit with my vision and also with my feet." (Tr. 35.) When asked to elaborate about her foot problems, Davenport indicated that she has a "little numbness and tingling" that lasts for an hour to and an hour and a half, which occurs approximately three or four times a week. (Tr. 36.) The ALJ then asked Davenport a series of questions inviting her to expound upon her vision problems. (Tr. 36.) She testified that she has blurred vision and that even when she wears glasses she is unable to see certain things, indicating that these problems occur "[w]henever [she is] looking at something or visualizing." (Tr. 36.) Finally, she stated that her lens prescription was changed after an eye examination the prior year. (Tr. 36.)

  Next, the ALJ posed questions to Davenport regarding a fall on the job that resulted in injuries to her head, knees, and back. (Tr. 36.) He first asked her to explain what treatment she has received for each specific injury, and Davenport responded that she has had "quite a bit" of

treatment and therapy for her knees, that she has had an MRI of her head and cervical spine, and that she has nerve damage to her left elbow. (Tr. 36-37.) When asked whether she is currently taking any medications for her head, knee, and back pain, Davenport answered that she was not but that she was on Vioxx "for a minute there" and was also on Darvocet. (Tr. 37.) The ALJ inquired about how often Davenport visits her doctor for these complaints, and she explained that "in the last year [she] saw them maybe three or four times." (Tr. 37.)

       The ALJ then asked Davenport if she has any problems standing, and she replied that she does have problems because of her lower back. (Tr. 37.) When asked about how long she can stand without problems, Davenport indicated that she can stand "[m]aybe only about five minutes." (Tr. 37.) The ALJ next inquired about how long Davenport can walk without problems, and she answered, "[A]bout five or ten minutes." (Tr. 38.) He also asked her what problems she has with sitting, and she explained that her back stiffens up. (Tr. 38.)

       The next topic of inquiry was Davenport's pain. (Tr. 38-39.) Specifically, the ALJ asked Davenport to rate the level of her knee pain on a scale of zero to ten, with zero meaning no pain and ten meaning "such pain [that] you have to go get immediate medical treatment." (Tr. 38.) Davenport rated her knee pain as a six. (Tr. 38.) The ALJ then posed a series of questions inviting Davenport to elaborate on her knee pain. (Tr. 38.) Davenport explained that the pain is a throbbing pain, that she does not experience knee pain all the time, that medication reduces her pain "[a] little bit[,]" and that the only thing she can do to relieve the pain is "sit down off of [her] knees." (Tr. 38.) When the ALJ next posed questions regarding her back pain, Davenport rated the pain as a six or seven and testified that she lies down and applies heat to relieve the pain. (Tr. 39.) The ALJ also asked Davenport how often she gets headaches, how long they last,

4

and what problems she has because of them, and Davenport replied that she gets headaches "on and off all day, everyday[,]" that they sometimes last all day, that they affect her vision, and that she is unable to do anything when she gets them. (Tr. 39.)

The ALJ then moved on to discuss Davenport's hypertension. (Tr. 39-40.) Davenport answered affirmatively that she takes medication for hypertension, and when asked what problems she has as a result of the condition, she responded, "If I have a blood level, stress level, it's up there." (Tr. 40.) The ALJ then inquired, "[W]hen you have high blood pressure . . . [is it] stressful for you?" (Tr. 40.) Davenport responded that it was. (Tr. 40.) The ALJ also asked if she "feel[s] jittery," and she again answered in the affirmative. (Tr. 40.)

When asked about her thyroid problems, Davenport indicated that she takes medication. (Tr. 40.) The ALJ followed up by inquiring, "How does the medication work for you? Does it work or do you have problems related to that?" (Tr. 40.) Davenport explained, "[T]he doctors here, they're not sure. I know I have a cyst that one doctor found . . . [a]nd they're checking into that." (Tr. 40.) She then answered in the affirmative when asked if she might have to have surgery to remove the cyst. (Tr. 40.)

Next, the ALJ asked Davenport if she has a heart problem, and she testified that she had visited a cardiologist, "but there was nothing there. They didn't find anything." (Tr. 41.) She also indicated that she takes an aspirin every day as a precautionary measure. (Tr. 41.)

The ALJ also questioned Davenport about her anemia, asking if she feels tired all of the time. (Tr. 41.) She answered in the affirmative. (Tr. 41.) The ALJ followed up by asking if the medicine she takes for her anemia helps, and Davenport explained that the iron pills she takes "helps build [her] blood back up." (Tr. 41.)

Next, the ALJ posited the following question to Davenport: "What do you do during an average day, just describe what you do? You know, what time do you get up and what are you able to do and what can't you do?" (Tr. 41.) Davenport replied:

> [W]hen I . . . wake from the bed I have to . . . not get up real fast and stuff like that. I have to wait a minute until I get myself together. . . . [A]nd after I get up then I take my medications and some of my medications I have to wait an hour or two before I eat or anything like that. So . . . basically then I wait for a few hours before I eat and I'll cook me [sic] something to eat. Then I will eat that. And then like [sic] was dishes afterwards. And then in between that time I'm either sitting on the couch . . . and then it's time to fix dinner."

(Tr. 41-42.)

Finally, the ALJ asked, "Do you have any other problems that we haven't discussed or that we need to discuss in greater detail, health problems [sic]?" (Tr. 42.) Davenport answered, "I think we discussed–maybe that's all of them." (Tr. 42.)

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants the district court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard.[4] *Clifford v. Apfel*, 227 F.3d 863, 869

---

[4] Generally, a remand for further proceedings by the Commissioner is the appropriate remedy when an ALJ's decision is not supported by substantial evidence. *Rohan v. Barnhart*, 306 F. Supp. 2d 756, 770 (N.D. Ill. 2004). On the other hand, an award of benefits is "essentially a factual finding best left for the [Commissioner] to address in the first instance, unless the record can yield but one supportable conclusion." *Campbell v. Shalala*, 988

6

(7th Cir. 2000).

To determine if substantial evidence exists, the court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

### III. DISCUSSION

#### A. Legal Framework

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

In determining whether Davenport is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required him to consider the following issues in

---

F.2d 741, 744 (7th Cir. 1993); *see also Briscoe v. Barnhart*, 524 F.3d 345, 356 (7th Cir. 2005); *Rohan*, 306 F. Supp. 2d at 770; *see generally Burroughs v. Massanari*, 156 F. Supp. 2d 1350, 1367-68 (N.D. Ga. 2001) (articulating that the court may award DIB if "the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability *without any doubt*") (emphasis added). Here, Davenport seeks an award of benefits as an alternative form of relief; however, she fails to cite any evidence indicating that the record "yield[s] but one supportable conclusion." Indeed, her briefs are devoid of any discussion of her medical conditions. In any event, because the undersigned Magistrate Judge will recommend that the ALJ's decision be affirmed, it is unnecessary to further consider Davenport's request for benefits.

sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[5] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The ALJ's Decision

In a written decision issued on April 13, 2006, the ALJ determined that Davenport was not disabled. (Tr. 11-16.) The ALJ decided in Davenport's favor on steps one and two, finding that Davenport had severe impairments including cubital tunnel syndrome of the left upper extremity;[6] mild degenerative joint disease of the bilateral knees with arthrofibrosis, left greater than the right; degenerative arthritis of the cervical spine; insulin dependent diabetes mellitus; and history of slight left meniscus tear. (Tr. 15-16.) However, the ALJ found that she did not

---

[5] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R. §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

[6] "Cubital" is defined as "[r]elating to the elbow . . . ." *Stedman's Medication Dictionary* 408 (28th ed. 2006).

meet a listing at step three. (Tr. 16.) He then ascertained that Davenport had an RFC "to perform a range of light work reduced by the following limitations and restrictions: no climbing ladders, ropes, and scaffolds; no work around unprotected heights and dangerous machinery." (Tr. 14, 16.)

Based on this RFC, the ALJ found at step four that Davenport could return to her past relevant work as a: (1) medical records clerk as generally performed in the national economy; (2) dietary aid as she previously performed it; (3) cashier as generally performed in the national economy and as she previously performed it; and (4) medical billing clerk as generally performed in the national economy and as she previously performed it. (Tr. 16.) Therefore, Davenport was not entitled to DIB or SSI. (Tr. 16.) In reaching this decision, the ALJ found that Davenport's allegations regarding her limitations were not totally credible. (Tr. 16.)

Davenport does not challenge the ALJ's specific findings, nor does she argue that the ALJ's decision was not supported by substantial evidence. *See Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (noting that issues not raised before the district court are waived). Instead, she contends only that the ALJ failed to fully and fairly develop the record when questioning her at the administrative hearing.

**C. Davenport's Claim That the ALJ Failed to Fully and Fairly Develop the Record Fails**

"The ALJ in a social security hearing has a basic obligation to develop a full and fair record." *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997). This duty is heightened when the claimant is unrepresented by counsel, as the ALJ is required to "scrupulously and conscientiously probe into, inquire of, and explore all relevant facts." *Id.* (quoting *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991)). Nevertheless, before a district court determines that

9

an ALJ failed to assist a *pro se* claimant in developing the record, "a significant omission is usually required," which means that the ALJ's omission must have prejudiced the claimant. *Id.* (quoting *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994)). In that regard, "[m]ere conjecture or speculation that additional evidence might have been obtained in the case" is insufficient to demonstrate prejudice. *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994) (finding that remand was unnecessary because the claimant "has not pointed to any specific facts that were not brought out during the hearing . . .").

Here, Davenport maintains that "[t]he ALJ's questioning of [her] was cursory and lacked sufficient detail" and that "[o]bvious lines of questioning that would have revealed relevant facts were not pursued." (Br. in Supp. of Pl.'s Compl. to Review Decision of Commissioner of Social Security Administration ("Br. in Supp.") 3.) Davenport then posits over three pages' worth of questions that she believes the ALJ should have asked at the hearing, arguing that these "omitted lines of inquiry . . . were both significant and of critical importance to [her] case and their omission constituted clear prejudice." (Reply Br. in Supp. of Pl.'s Compl. to Review Decision of Social Security Administration 2-3.)

However, Davenport's conclusory assertion of "clear prejudice" is insufficient to warrant a remand, as she fails to point to any specific facts that would have been brought out at the hearing if the ALJ had, in fact, asked her proffered questions. *See Binion*, 13 F.3d at 246 ("[The claimant] has not pointed to any specific facts that were not brought out during the hearing . . . . Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand."). Indeed, her only attempt at arguing prejudice is that her proffered questions regarding pain medications "*may* have elicited responses such as: I could not

afford my medication; or my doctor was in the process of changing my medication; or the side effects of the pain medications prevented me from taking it anymore." (Br. in Supp. 7 (emphasis added).) This lack of certitude, indeed outright speculation about what answers she might have given to the ALJ, is insufficient to demonstrate prejudice and does not warrant a remand.[7] *See Binion*, 13 F.3d at 246; *Schumaker v. Barnhart*, 196 F. Supp. 2d 716, 725 (N.D. Ill. 2002) ("[The claimant] has merely invited speculation as to what he might have said at the hearing . . . . This is insufficient to meet the *Binion* standard of a particularized showing of prejudice.").

Furthermore, the undersigned Magistrate Judge "is of course mindful that an ALJ's heightened duty to develop the record when a claimant is unrepresented is tempered by the respect due to Commissioner's reasoned judgment as to how much evidence it is necessary to gather." *Paul v. Apfel*, No. 97 C 1224, 1998 WL 26176, at *8 (N.D. Ill. Jan. 15, 1998) (citing *Luna*, 22 F.3d at 692). Indeed, the Seventh Circuit "has commented on the difficulty of having a 'complete' record . . . ." *Luna*, 22 F.3d at 692. Given Davenport's utter failure to point to any specific facts that were not brought out during the hearing, the ALJ fully and fairly developed a "complete" record before denying Davenport's claim for DIB and SSI. Specifically, the ALJ questioned Davenport at the hearing about all of her alleged impairments, which included asking her about the following: how her diabetes affects her on a day-to-day basis; what problems she has with her vision; what treatment she has undergone for her head, knee, and back pain; how

---

[7] Davenport does not argue that her waiver of counsel was invalid; accordingly, the Commissioner is under no burden in these proceedings to establish that the ALJ fully and fairly developed the record, and Davenport's mere speculation that additional evidence might have been obtained is insufficient to support a remand. *Compare Nelson*, 131 F.3d at 1235-36 (assuming that claimant's waiver of counsel was valid and concluding that he "has not pointed to any specific facts that were not brought out at the hearing"), *with Young v. Apfel*, No. 3:98-CV-206RP, 1999 WL 325026, at *9 (N.D. Ind. May 19, 1999) ("In this case, [the claimant's] waiver of counsel has been found to be invalid, shifting the burden to the Commissioner to show that the record was fairly and fully developed. The Commissioner cannot fulfill that burden by simply arguing that the claimant is speculating about the type and effect of missing evidence.").

long she can stand, walk, and sit; how her headaches interfere with her ability to do activities; what problems she has as a result of her hypertension and thyroid condition; whether her anemia is helped with medication; and what her daily activities are. The ALJ also questioned Davenport's niece at the hearing.

Moreover, Davenport filled out several forms prior to the hearing regarding her medical conditions about why she believed they prevented her from working, the limitations doctors placed on her, her medications and treatment, and what activities she was able to do. (*See* Tr. 83-92, 109-14, 117-19.) Finally, the ALJ gathered and considered Davenport's medical records when rendering his decision, and Davenport does not challenge the completeness of the ALJ's record-gathering. Accordingly, the ALJ sufficiently probed the extent and nature of Davenport's impairments and their effect on her ability to work. *See Binion*, 13 F.3d at 246 (noting that the claimant had filled out several forms prior to her hearing; that the ALJ asked her at the hearing "to comment on why she stopped working, her treatment and medication, and the location, duration, and intensity of her pain and other symptoms"; and that the ALJ also asked the claimant's witness to comment on her condition).

## IV. CONCLUSION

Because the ALJ fully and fairly developed the record in this case, the undersigned Magistrate Judge recommends that the Commissioner's decision be AFFIRMED. The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties. NOTICE IS HEREBY GIVEN that within ten days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE

SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.

*See Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996).

SO ORDERED.

Enter for this 25th day of April, 2007.

S/Roger B. Cosbey<br>
Roger B. Cosbey,<br>
United States Magistrate Judge